My name is Yasmin Abai. I represent Omar Johnson on behalf of the State Appellate Defender. I would like to reserve three minutes for Rebecca, please. Margaret Smith Assistant State's Attorney on behalf of the people. Thank you. Again, the microphone is just for recording purposes, so keep your voice up so that people in the back of the courtroom can hear you. Thank you. May it please the Court. Your Honors, Omar Johnson is on appeal from the denial of his successive post-conviction, leaves the file of his successive post-conviction petition. In which he challenges his naturalized sentence for offenses committed in 1996 when he was a 19-year-old emerging adult. The sentencing hearing took place in 1999. Omar's petition, fully supported by numerous affidavits, including three detailed affidavits from Omar himself detailing his familiar history and his behavior post and pre-offense. Numerous certificates attached to this petition detailing the accomplishments he's achieved, letters from the warden, certificates. And also, very importantly, citing to newspaper articles which are now recognizing that the juvenile brain continues to develop into young adulthood past the age of 19. Are you saying that we need to make any kind of determination of what that age is? Yeah, at this stage, the question is, it's a very narrow question. And Omar would like to be granted leave to file his petition so that he can demonstrate that he is a 19-year-old, shared those very same qualities which the U.S. Supreme Court has declared make the pedagogical justifications for a naturalized sentence collapse. They said that in Montgomery. It is now recognized that it's not enough for the sentencing court to consider youth. They must consider the attributes of youth. And numerous courts in this state, in this state as well, have recognized that. The impulsivity, the immaturity, the... Well, did M. Johnson, the trial judge, talk about his age? Actually... Or some of the other factors? Well, just to remind you that a sentencing hearing happened in 1999, well before Miller. He did mention age, but in point of fact, he mentioned age as an aggravating factor. The court went on to comment that, you know, he was troubled by some youth and how they take out people's lives. So at that time, and maybe that's consistent with the change, you know, before our change in thinking, the era that Your Honor said Miller, the Wilbur, the Graham-Wilbur-Miller trilogy sprang on. So in point of fact, that court used youth as an aggravating factor. Why do you say he used it as an aggravating factor? Well, he considered it not to be the mitigating factor we know it now to be. Why do we know it now to be a mitigating factor? Couldn't the judge have been saying the evidence showed that you kidnapped your boss, put her in a trunk, executed her in the trunk by shooting her in the head and body, and you're 19 years old, you should have known better? I'm considering your youth thinking a 19-year-old knows not to do that. That shows wanton cruelty. Couldn't a judge consider that an aggravating factor in that light, not that you're 19 and therefore, you know, be gone? Well, I think I can only go on what the trial court specifically said, the sentencing court specifically said, and that's what I'm going on. But to speak to that question, we have a trial judge who's looking at it in a different lens, his age. At that point in time in our history, we didn't have the understanding that we now have, which is that juveniles are different. And in fact, now the research is showing, as cited by People View House, that actually juvenile brain development continues into young adulthood and past the age of 19, relevant here. Let me ask you, if this offense happened last year, and this defendant, with the same facts, had been sentenced yesterday, do you think that knowing what we know about Miller and all those factors, the trial court would have thought differently of the sentence he gave? Knowing all these factors and considerations, don't you think the judge thought about all this at the time? Not in the terms of, oh, Miller versus whomever. Well, the judge at that time did not have the benefit. I mean, the judge is a judge. He's not a scientist. He's not a neurobiologist. He's not a developmental psychologist. And didn't have the benefit of the scientific studies we now have. But speaking to the vicious nature of the offense, if you look at Miller itself, if you look at River, in fact, in fact, in Miller v. Alabama, the defendant engaged in what the Miller defendant. There were two defendants, if you recall. One was accountable and one was guilty by way of, as a principle. The Miller defendant, the court explained that his crime was vicious. In River, the court said it may be true that the defendant engaged in a brutal crime, but that's not enough for the court to rely on that factor alone. In the absence of all of these attributes of youth. Because they were mandatory sentences. Actually, Montgomery makes clear that Miller's holding is broader than just mandatory sentences. Yeah, but Miller was a mandatory sentence. That's why that language is appropriate, not for me to say what the U.S. Supreme Court's language is appropriate at, but it was driven in the context of a mandatory sentence. We now all know that our Supreme Court has told all the judges and all the lawyers that the Miller factors apply to juveniles in both discretionary and non-discretionary de facto life sentences. Okay, we get it. We understand all that. But I keep going back to Holman, and I commend to your attention People v. Croft. Yeah, thank you very much. I listened to the earlier argument, and there's three. Impressive, wasn't it? Very much so. Okay. There are three points that I would like to make in response to that. Holman does not dictate this case. Number one, we were dealing with a juvenile defendant in that case, okay? And that's why – well, let me back up. Number one, you mentioned earlier that it's not – you look at the sentencing transcripts, and certainly that's a consideration if the defendant were asking for a new sentencing hearing. In this case, the defendant is only asking for leave to file. And he's made a prima facie showing of cause and prejudice. Leave to file for what purpose? Leave to file in order to demonstrate that he, as a 19-year-old emerging adult, shared those very same characteristics which the U.S. Supreme Court has now declared have made a natural life sentence unconscionable or unconstitutional, except for in the case of those deemed irreparably corrupt. Now, as far as Holman goes, there's a quick comparison, and I'll get to that, between the sentencing hearing that happened in Holman and the sentencing hearing in our case. But first, Holman dealt with a 17-year-old defendant who received a mandatory natural life sentence. So there was none of the questions that arise in this case. In this case, the defendant must be granted leave to file in order to demonstrate that he, as a 19-year-old defendant, emerging adult, shared some of those same statistics or characteristics. Did he have the opportunity to bring that information to the sentencing court? No, he didn't have the benefit of the knowledge that we have now. His sentencing hearing happened in 1999. And in point of fact, and I'd like to discuss his sentencing hearing too, his sentencing judge or his defense counsel didn't once remark on his personal attributes. None of those attributes that are those detailed information that's contained in his affidavits was mentioned by his defense counsel. His defense counsel spoke generally and, in fact, referred to a story about a youth in an article he read. He didn't refer once to Omar's specific attributes. And the court did not give Omar an opportunity to speak to an allocution in our case. And again, as I mentioned before, the court was looking at youth in a different way than we look at youth today. He certainly wasn't looking at youth as being indicative of impulsivity, heedless risk-taking, of an inability to extricate oneself, and a greater ability to reform. He wasn't looking at it in that context. But getting back to why Herman doesn't dictate, because Harris, the 2018 Illinois Supreme Court decision, that combined with Thompson, which both dealt with emerging adults, laid the framework for how an emerging adult should go about establishing his, as applied, Miller and under the Eighth Amendment, an Illinois proportionate penalties challenge. Those courts said that the proper forum in which to do that is in a post-conviction petition, where they can develop a factual record in support of their claim that they shared these various statistics. Their developmental psychologists could evaluate the defendant in that case. And as I said, we have so many additional pieces of information that were attached to Omar's successful post-conviction petition that were just not before the sentencing court. Unlike Holman, Holman is a very narrow case. And in point of fact, the Illinois Supreme Court declared it as that. The defendant there had three psychological reports prepared about him. The defendant was given a specific opportunity to present information, and he refused. He specifically told his defense counsel not to present evidence in support of him. And he also confessed to eight uncharged, at least eight, I believe, uncharged offenses. We're dealing with a much different defendant. And again, I bring your honor back to Miller and Wilker. It's the same impulsivity and heedless risk-taking that might make a defendant more susceptible to committing an act which is deemed vicious and brutal. That doesn't mean his natural life sentence or his sentencing hearing comported with the Eighth Amendment or the Illinois proportionate penalties clause. I'd also like to – Your argument would be that whether the case is based upon accountability or if it's as we have here in the Omar Johnson case, that makes no difference. It makes absolutely no difference, your honor. And which case are you relying on when you take that position? There are several cases. One – and you're speaking, I think, to the interpretation of People v. House, which was issued by this appellate court. Since House has come out, other courts in unpublished decisions have been limiting it to the fact that that involved a mandatory sentence. And it's not limited to mandatory sentences imposed on lookouts. You were speaking to the fact that – House was decided November 25, 2018. You're referring to some unpublished decisions. No, no, no, no. I'm not. I'm actually addressing – it doesn't even matter about the – I can refer to them. But I'm referring to House was issued initially December 24, 2015. It was reissued in – just recently, I believe – May 16, 2019. If I'm not – or 2000 – yes, I believe so. May 16, 2019. The newest, after it was – after the Illinois Supreme Court reversed and remanded in light of Harris. But in that case, the court relied heavily on several factors. One, neurobiological and developmental psychology research showing that the brain continues to develop into young adulthood. And there's been some concern about whether that was just limited to the fact that that defendant was a lookout. In that case, House, the court chose not to remand for further post-conviction proceedings, as Mr. Johnson would like. They remanded for a new sentencing hearing. And the court looked at his involvement in the crime, the fact that he was found guilty by way of accountability. That's just a malice factor. That's actually one of the malice factors that our courts – or our legislature, I apologize – has designated that sentencing judges must look at. And certainly, that's a consideration of a court on remand. But there are two different stages. None of the scientific or developmental psychology research about the brain developing and continuing to develop into young adulthood has anything to do with whether the defendant is accountable or not accountable. That's just scientific research that is pointing us into the direction of finding that young adults should be treated like minors. Emerging adults should be treated like juveniles in Miller v. Alabama. So there is no distinction in that way. And to bring that back, people v. Harris and people v. Thompson both involved defendants who were principally guilty. They weren't guilty by way of accountability. And yet the Illinois Supreme Court said that they could potentially establish their as-applied challenges in the post-conviction petition. If the fact that they weren't accountable foreclosed the issue, then the courts wouldn't have advised them to develop their claims in further post-conviction proceedings. And you have to remember, again, Miller itself involved two defendants. One was guilty by way of accountability, and one was a principal shooter. It didn't matter. It doesn't matter. As long as the scientific research extends, patterns show us that emerging adults may be like the juvenile counterparts and the defendant can establish out of later post-conviction proceedings that he, in fact, shared these same characteristics. But it shouldn't matter whether he was guilty by way of accountability. In fact, you would, as I expected, the same kind of hideous risk-taking would lead someone to engage in a brutal crime or a vicious crime. Now, intentional kidnapping and execution of someone in the trunk of her car is heedless risk-taking? Or is it indicative of wanton cruelty? That's something that a sentencing court can only make a determination of in light of... And can we read what the sentencing court said and did? Absolutely. Can we make a decision that, based upon that evidence at that hearing, the decision was it was wanton cruelty and not heedless recklessness? Absolutely. That is one consideration that we need to take into account. It is not the end-all, be-it-all of this discussion. As I said, this defendant needs to establish, or is only asking this court to be given the opportunity to establish that he shared some of these very same qualities like his juvenile counterparts. If brutal and heinous were the only factor, then Miller wouldn't have come out the way it came out. Then Roper wouldn't have come out the way it came out. Or Harris, for that matter. Absolutely. I mean, the fact is, these defendants have engaged in crimes which can be described as brutal. But that's not the end of the story. That's not what Miller's teaching. And now, with the new research that's telling us that the brain continues to develop into adulthood. And for our purposes here, the age of 19. But there were, again, I'd like to go back to the sentencing hearing itself. It happened in 1999. Pre-Miller, pre-Defense Counsel made no argument regarding Omar whatsoever. And as I said, the court considered youth as a negative quality and didn't consider the fact that he had an abusive father, the bullying, the difficult home life that he's described in his post-conviction petition, shuffling between two states. He also says, and this is important, he rejected a 45-year plea deal. Miller speaks to this as well. Miller v. Alabama says that juveniles or young minds are unable, often, to deal with the court system, to deal with their attorneys, to make wise choices. And here we have more evidence of that. And he also alleges that while he was 19, he was quite immature, hanging out with those who were younger than himself. You're immature if you hang out with people younger than yourself? You know... I mean, is that your point? That's his pleading. Okay, and you're asking us to accept that as persuasive? No, I'm just saying that that's evidence in support of his claim that he shared some of those characteristics like the Miller defendants. Like, again, I'm not here to debate that this was a brutal crime or wasn't a brutal crime. That's not the end of the discussion. Miller tells us that. Roper tells us that. We understand that. Yeah. But you're basically arguing that because he's 19 and he got three consecutive 60-year sentences, I think they were consecutive. Current, current. So that he'll be 79, theoretically, when he's discharged. He has a natural death sentence. He has to serve either way. Yeah. Okay. Okay. All right. Either one. That he automatically gets a resentencing hearing. Absolutely not. He just wants to be given an opportunity to develop a record in support of his claim that he should get a resentencing hearing. The Supreme Court directed us to see whether he had an opportunity to present those types of factors. Did he not have that opportunity to present youthful indiscretions and characteristics for the trial court to consider? The difference between the Holman defendant and our defendant is we're dealing with one who's an emerging adult. Harris and Thompson, Harris in particular, which comes out after Holman, directs what those defendants need to establish. Because at that time, even now, Your Honor, there are justices who don't believe that the juvenile brain is developing. That's a current area of the law or of medicine and science, that they're now realizing that the juvenile brain continues to develop past the age of 18. And that's what he wants to be given, just that opportunity to develop his claim. Whether he can succeed and whether he's entitled to a new sentencing hearing following a full-blown post-conviction proceeding is a question for another day. If there are no further questions, Your Honors, we would just simply ask that this Court remand for further post-conviction proceedings in line with what Thompson and Harris directed similarly situated defendants. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court. I'm Assistant State's Attorney Margaret Smith, representing the people of the state of Illinois. This Court should affirm the denial of leave to file defendant's excessive post-conviction petition because defendant has failed to meet his burden of establishing a prima facie case showing of cause and prejudice. If I may briefly just go over the facts of the case here. I don't think that's necessary. Okay. Maybe I read all the briefs. Okay. Defendant has failed to show cause because there's no Eighth Amendment protection of Miller. Excuse me. The Eighth Amendment protections of Miller only apply to juveniles, and here defendant was an adult. There's no Illinois Supreme Court case that has recognized an adult Eighth Amendment Miller-based challenge. So defendant has no claim as a matter of law. Additionally, defendant's as-applies proportionate penalties challenge fails because as an adult he cannot claim Miller-based protections based on his discretionary life sentence. That's the issue before us. Yes. And if I may just correct one point in the record. Counsel stated that at the sentencing hearing that the court did not consider defendant's age as a mitigating factor. In fact, the appellate court in the Rule 23 decision that we cite in our facts actually states that the trial court, the sentencing court, stated that was the only mitigating factor. So that's incorrect that the sentencing court did not consider defendant's age in mitigation. But whether they did or didn't, it really besides the point. If it's only age, then the other factors haven't been considered, have they? No. No. In fact, the court did consider his age. But additionally, it did consider every other mitigating factor that defendant presented. But defendant wasn't able to present other things. No. At that time, as we've discussed earlier, the whole line of cases that ended up in Miller hadn't been decided yet, had they? So why would counsel have, back in the 99, have said that? Well, the factors are the same. They just weren't called Miller factors at that point. No. That's not the same. They weren't something that people were talking about because juvenile life sentences were still being given out at that time, obviously. So we don't have that. That's not the issue now. It's different today. Okay. Well, at defendant's sentencing hearing, he was allowed to present evidence of his age and any other mitigating factor. In fact, he presented people to testify. He presented his father to talk about his home life. So, in fact, some of the factors that are discussed in Miller were brought up in defendant's sentencing hearing and have been brought up before Miller in sentencing hearings. Some of them. Some of them. And here, defendant did bring up his age. He brought up his home life. He had his father testify, and his father said he had no idea why defendant would have committed such a heinous crime. So that was a factor. Also, the fact at defendant's sentencing hearing, the fact that he graduated from high school, that he had started studying for an associate's degree, that he was employed at the time of the offense. In fact, he killed his employer. So defendant here, individual factor was that he was employed at the time of the offense. Also, he was on probation for a robbery at the time of the offense. I understand those facts, but that's not the issue before us. The issue before us is whether because of the evolving consideration of life sentences for those that are over 18 or over. That's what we're considering here under the Illinois Constitution. So, again, I can't say see how when the law was not as it is today, we can go back in time and say that he had an opportunity to present all this. That's why he's trying to do it now. Right. And in Harris, the court said that an adult defendant is not necessarily foreclosed, but set forth the fact that age alone is not sufficient, and that an adult defendant must plead individual characteristics similar to those of a juvenile that would put him in a similar place as a juvenile so that he would be afforded the presumption, something like the presumption that a juvenile is given about the brain science. So Harris says adults can't just point to their age, and they do not get the presumption of the brain science in Miller because they're adults. They don't get that presumption. They have to talk about their age, and they have to talk about specific characteristics. They have to plead specific characteristics to them to make them similar. That's what he needs to do in order to be resentenced. In order to show cause and prejudice, which is where we are. We're talking about whether he has leaved the file. The cause is established based upon the new factors that are out there, the new factors that need to be considered, which are the Miller factors. We would respectfully disagree that that cause is not established. Allow me to finish. That's where the cause gets established. Now, if the defendant is not at this point asking to be resentenced, the defendant is asking simply to be allowed to file the petition to get to the Miller factors and to show how his circumstances are such that the issues that would normally apply to a juvenile defender should apply to him. And the only way that he's going to be able to do that is by way of a hearing. We would respectfully disagree, Your Honor. We would say. So how else does he do that? Through his pleading. Adult defendants. Harris says that an adult defendant has to plead. He's already pled that he's just like a juvenile. No, he's tried to, and he has not done so. He went to the best that he could. He's tried to. Right. We're getting there now. He's tried to. And this is a petition that's filed without the assistance of counsel. This is just something done by someone who's sitting in a jailhouse, maybe just working with a jailhouse lawyer or some other person that just knows the law really well. And he's done the best that he can to get those factors before the court. But in this case, the judge summarily dismissed the petition with maybe one statement about the petition. And so the defendant hasn't had the opportunity to present this information to the court. And that's all he's asking for right now is the opportunity to present this case to the court so that the court can decide whether or not he should be re-sentenced. Okay. If I may. Please. Okay. Well, we're here on post-conviction, and defendant has a burden. Even if he's pro se, under the Post-Conviction Hearing Act, he has a burden of establishing a prime facia showing of cause imprejudice. That's what he needs to do here. And he hasn't done that. And when we talk about whether he had an opportunity, he had an opportunity at the sentencing hearing. And as has been discussed, he did bring up his age. He brought up his home life. He brought up many factors before the sentencing court here. He had the opportunity that Miller was. Justice Walker's question had to do with his petition now and what he had to do. And as someone who is in prison who has limited resources, he did attach some appendices to his petition. I mean, he did what he could do to present. Again, all he wants to do is get an opportunity to make the case. He hasn't made that case yet. He's just saying, give me an opportunity to show the Miller factors. You're saying, no, he already did. That's what you keep. You keep going back to the hearing in 1999. But that's not, to me, that's not the issue today. The issue has to do with whether he gets this opportunity because he's a young adult and the door has been opened and the law is evolving on this issue and whether he should have that opportunity to have an attorney to assist him in making his argument. If I may, I have a number of points to address your concerns. First of all, Miller was dealing with juveniles and mandatory sentences. The concern there was that the mandatory nature of the sentencing schemes deprived the juvenile of bringing forth the factors, individual factors, to be considered and then brought together with the brain science concerning juveniles. That's what Miller addressed. But you also agree that at this point in time it's not limited to mandatory sentences because I believe you were here for the early argument. I was not. Okay. Well, the State conceded that in the early argument that it does apply to both mandatory and discretionary sentences. Okay. But Miller also addressed juveniles. We're not talking about just Miller. We're talking about all the cases that have come after Miller. Right. And what we have here is we look at Holman. We look at what happened at the sentencing court. And as with this particular defendant, Mr. Johnson has filed numerous pro se pleadings. He is no stranger to filing. He has, in fact, if I believe, he actually got this court to strike an opinion after this court had ruled. He can be persuasive to this court. He said, I understand that you've made a ruling on this matter after it's been fully briefed, but I'd like to represent myself. So he hasn't. I'm just saying. I don't understand your argument at all. For me, it's something that should be applauded, and so what? Well, I'm saying that as a pro se defendant, he has shown himself capable, and he needs to. I'm trying to address the concern that as a pro se defendant on post conviction, whether he would be able to meet the burden. He still has to meet the burden. He has not met the burden of establishing cause and prejudice to be able to file, because he has not shown how he, according to Harris, any individual factors. In fact, the crime here, let's take impulsivity as an example. One of the factors. In-house, the fact that the defendant, who was a 19-year-old and had a mandatory, there was discussion before about the fact that there was accountability. The reason the court focused on accountability is you're talking about what that individual's role in the crime is, whether he was a lookout in-house. Here we don't have any accountability. We don't have any peer pressure. We don't have anyone else having the defendant commit this crime. Here what we have is a lack of impulsivity. We actually have someone who says, you know what, I know this lady. My boss is going to be making a deposit of large amounts of cash. I know where she's going to be. I'm going to go get a gun. I'm going to go find her in her car before she makes that deposit. I'm going to force her somewhere. I'm going to force her into a trunk. But it was premeditated. It was calculated. It was not impulsive. This crime alone shows the defendant does not have the factors. But is that alone? What else beyond that? He was able to present evidence about his home life at the sentencing hearing. He did that. By himself, without a lawyer? No. He had a lawyer, and he presented witnesses to the factors. So if you have a lawyer, and right now he doesn't. We're trying to get him to have a lawyer. Even as a per se defendant, he is required to establish cause and prejudice in order to get leave to file his petition.  you are required to establish a cause and prejudice in order to get leave to file the successive petition. If there are no further questions, for these reasons and those set forth in our brief, we respectfully request that this Court affirm the denial of leave to file a successive post-petition petition. Very briefly, if I may, just to clarify the record. I will cite from the record, if I may. This is from the sentencing hearing. This was the court speaking about youth in a negative way. For the court previously found that accordingly, is something I see in this young man, which I see not just in himself, but in many others. And that is the fact how easy it is to take out a human life without remorse of any kind, with no feeling. It's not, and then it goes on, and then he goes, it's not just this young man here. It's many, many others that I see. So he was referring to youth actually in a negative way. And again, Justice Walker and Justice Hyman, you both pointed this out. The sentencing hearing happened at a different time, in a different era, where youth was not considered in light of, age is not just a chronological factor. And the U.S. Supreme Court has said that time and time again. So just saying youth doesn't make a sentencing hearing okay. In fact, Justice Pierce, you also found that way in People v. Morris. You said it's not just the fact that the sentencing court refers to youth, but they must refer to the attributes of youth. Those attributes, which I'd like to discuss too. What possible attribute did this trial court judge miss after he sat through the proceedings and ultimately found this defendant guilty of a brutal, heinous, meditated, premeditated murder for money? What did he miss when he said that this 19-year-old was callous? What was it about his youth, his youth, that the judge missed? He wasn't thinking or realizing or contemplating anything other than this 19-year-old before him. Sure. And I'd like to speak to that. What did he miss? In addition to the fact that he didn't know that the brain was continuing to develop into young adulthood and the age of 19. How do you know he didn't know that? He didn't know. How do you know he didn't know that? Scientists didn't know that. I can tell you that no one was presented at the sentencing hearing. And there is no scientific evidence about brain development. Have you read Holman? I have read Holman, yes. Have you read the admonishments in Holman as to what judges are supposed to do? Yes, and I've also read Harris, and I've also read Thompson. And all of them dictate defendants to do exactly what this 19-year-old defendant or this defendant was doing based on an offense that he committed in 1999. Have you read Croft? I have not, but I briefly read it. Okay, commend it to your attention. Thank you. I believe it's a second-stage PC dismissal or reverse. I think it's at a different stage, if I'm not mistaken. I happen to be the author of Croft. That's fine. So I'm going to tell you what it is. Please tell me. It was the dismissal of a lead to file a successive petition. That's what it was. That's fine, and my answer will remain. That predated, if I'm not mistaken, Harris. And if it isn't, the point is, and I'd like to discuss what the trial court didn't have before it. Because the state's made reference to it. I understand, but I'm responding to the state's arguments. She claims that the father spoke. It was a brief mention. There was no admission of the abuse that he suffered, which is something which our courts now recognize as being relevant when sentencing young adults. Again, there was no evidence. And we don't know. Actually, peer pressure may have played into this. There was evidence that there was another person involved in this crime. There was bullying that he experienced. These are all information that are new, that are contained in his past conviction petitions. To the extent that he has filed prior PC petitions, it is beyond dispute that he could not have raised this murder claim any earlier than he did. He filed his post-conviction petition, his successive post-conviction petition, on December 1, 2016. We have to remember, House has decided, the initial House decision, which was the very first decision to extend the science or say that 19-year-olds were continuing to have brain development, their brains were continuing to develop. That came out December 24, 2016. Montgomery v. Louisiana, the case that held, that clarified the scope of Miller, two discretionary sentences, and for the first time held that it was retroactive, wasn't decided until January 27, 2016. And very finally, just to step back, the facial, this is as applied challenge, is something that the state is missing. Miller spoke to, in Harris, this court said, that a 19-year-old emerging adult's facial challenge pursuant to the Eighth Amendment failed, but the proper remedy was to raise his, as applied, Eighth Amendment challenge in a post-conviction petition. That continues to remain. And that is why Mr. Johnson would like the opportunity to develop his claims in a post-conviction proceedings. Thank you. Thank you very much. I want to thank counsel for the state and for Mr. Johnson. Appreciate your briefs, your oral arguments. We'll take them under advisement. We are adjourned. Thank you very much.